and Mr. Forbes. Do you want to proceed? Yes, Your Honor. Thank you. May it please the Court, I am Matthew Forbes and I represent Plaintiff Appellant Jason Grisby in this First Amendment Retaliation Appeal involving issues  may I reserve three minutes of my time for rebuttal? You certainly may. As you can see from the briefing in this case, the issues have now narrowed. The parties are in agreement that at the least the judgment below must be vacated and the case remanded for further proceedings. That's because the appellate Brent McBeth concedes that there Given this agreement on that much, I want to focus on what I think are the four most important points before the Court today. The first is what the proper court order should be. The proper court order should be reversal and remand, not merely a vacatur and remand. That's because the decision that is being reviewed is the District Court's grant of the motion for summary judgment. Under Rule 56... Well, wait. Hold on a second. A reversal, and maybe this is messing with words, but I've understood a reversal to mean you're wrong, and in fact, you're so wrong about who should win that the other side should win, so now the other side has to win. Whereas it's not clear who ought to win at this point, so take it back and work it some more. Is your position then, using that as a working definition, your position then that this has to go back just for the sake of entering judgment for your client? Thank you, Judge Jordan. I mean, I guess I wouldn't attach a stigma to it. However, I do think that under Rule 56, if there are fact issues that are present, that it's error to grant summary judgment, and that the only possible outcome is not granting summary judgment, denying it. So I do think that reversal is appropriate here. Also, if there's a mere vacatur and remand, I think it would lead to confusion as to what the next steps would be below in the district court. Would the summary judgment motion remain pending? What is the law of the case? All that could be confusing. If you revert, Macbeth still hasn't filed an answer in the case. He could conceivably file another wild motion, perhaps offer a new motion for summary judgment. I think a reversal would just lay the clearest procedural path for the next steps on remand. Does that mean, Mr. Forbes, I have the same sense that Judge Jordan has. How, in effect, does the reversal help you more than if we vacate? I think, again, I think it just ensures that some of the same issues aren't re-raised. It could also, depending on how the reasoning and the holding of this court, it may firmly establish that my client has, in fact, exhausted his available remedies, whereas a mere vacatur may not do the same thing. So as opposed to just the order, what is it you want us to do? What is it you want us to say in the opinion? Sure. So I think the second issue is, I mean, I would like for the opinion to directly confront the problematic interplay between 801 and 804, DCADM 801 and DCADM 804. And that's that there's this gap where if a prisoner alleges a retaliation claim based on a misconduct charge, neither of these two procedures permit for administrative adjudication. And this is the main difference now, as I understand it. The appellee is arguing, don't confront this issue. Instead, remand solely on the factual disputes that the parties are in agreement to and send it back down to the district court. Mr. Grisby is arguing, no, the court should take this opportunity, address it right now. I think there are at least two good reasons for principles of judicial autonomy, call for the court to do it now. The first is that this case might... Mr. Forbes, explain, just take a moment. Do I understand you correctly to have taken the position that Mr. Grisby had neither DCADM 801 nor DCADM 804 legally available to him within the meaning of the Prison Litigation Reform Act? Neither of those... That's absolutely correct, Jim Jordan. So 804 is not available legally because the text of the regulation is very explicit. If you have the joint appendix in front of you, if you turn to 129, JA 129, you'll see the relevant section and it's pretty, I think it's pretty explicit. It's section 1A7 and it states that a grievance directly related to a specific inmate misconduct charge will not be addressed through the inmate grievance system. And that's a pretty explicit statement that says that claims like my clients can't be grieved. So that's 804. 801, the reason why legally he wasn't permitted to bring it there is if you spend, if you just take a couple moments reading through 801, you'll see that there's no opportunity for a prisoner to present a counterclaim or raise a cross grievance or any kind in that. The 801 is solely about a charge that's been addressed to you, to a prisoner, and whether that charge is accurate or not accurate. And so as the appellee has stated in his brief, it's kind of like a criminal docket. Is the prisoner guilty of the  Well, help me understand something more about 804 here. It says that a grievance directly related to a specific Right, that's what you were saying a minute or two ago? It's correct. It says it must be addressed through 801. Okay. And your assertion about 801 is that, and I recognize that there's, these are prison regulations, right? So how they get applied, I guess, is a matter that we're going to have to be asking your learned colleague about here. But what makes you believe that in the context of a misconduct, grieving that, you can't talk about the things you want to talk about here? His piece, his complaint, is that they were retaliating against him, right? That's correct. And can't you make an argument about a misconduct grievance being unlawful? I mean, doesn't the Program Review Committee actually have the authority to look at things and say, well, that wasn't lawful? Yes, I do believe that they have the ability to say that a misconduct charge was not lawful. Okay. If that's true, and Mr. Grisby could make the case that this was just a retaliatory move, there wasn't a basis for it, why isn't that an available grievance proceeding for him? Because, well, first, a couple of reasons. First is that as the appellee has conceded in their brief, it very well may be that a prisoner can be held liable for a misconduct charge and simultaneously be legitimately subjected to retaliation. And that's because misconduct charges could be accurate and still be issued as pretextual retaliation for protected conduct or protected status. The appellee states this on page 17 of his brief. And why does that make it unavailable to you? Well, I think the second reason it makes it unavailable, Judge Jordan, is because there's no possible remedy that would be available to a prisoner. There's nothing in 801 states that the hearing examiner could authorize damages to a prisoner, for example. The opposite is true. I mean, the regulations know how to write this. In 804, for example, there's text in the regulation that contemplates that monetary relief can be given to a prisoner. Nothing like that exists in 801. So your primary complaint is not that your client can't get relief, but that he can't get money. Well, no, it's relief, Judge Jordan. You could get relief. I mean, I thought we just had an understanding that within the power of the prison system under 801 to say, hey, this is a bad charge. It was retaliatory. It was unlawful. And therefore, we're lifting it. That's a form of an expungement of the misconduct charge and presumably a restoration to the individual prisoner of prior status. So, you know, if they were put in the shoe or something like that, they're taken out. That's relief. So there's relief available. It's just not money relief. And that's – I mean, unless I'm misunderstanding your argument, you're agreeing there's some relief that could be had. It's not money, and therefore, you don't think that's enough. Am I misunderstanding you? I'm not sure if a hearing examiner found a retaliation claim to have merit, whether that would necessarily authorize the hearing examiner to dismiss a misconduct charge if, for example, the hearing examiner found the misconduct charge to be accurate. For example, let's say in our – So hold on a second. Are you suggesting that a prisoner is entitled to behave badly, to engage in misconduct if provoked? Not at all. Not at all, either. Okay. Well, then I'm still – I apologize, but I'm not following you. The Commonwealth's position that you could have at the same time a bad-behaving inmate and an ill-motivated guard who might otherwise not have issued a misconduct but who, because they're angry at this particular inmate, go ahead and do it. Yeah, both those things could happen at the same time, and then why shouldn't both those parties suffer some consequence? The inmate who actually did engage in misconduct suffers a consequence, and the guard who was being retaliatory gets called out for it. Is there something off about that, something that you think makes it unlawful or makes the administrative release not available to your client? Yes, absolutely. The first is that if the misconduct charge, even if accurate, is pretextual for – in order to retaliate based on protected status or for example, in employment litigation, let's say that an employee is regularly late to work, but the employer fires them for being Catholic, and the real motivation is that the employee is Catholic and the coming late to the office aspect is pure pretext. Even if the employee was actually late regularly, that doesn't change that the employer's action would be retaliation, and I think that's what's going on here is that let's say that in a misconduct proceeding, a prisoner actually did what is alleged in the misconduct charge, but the presuming that a hearing examiner would have authority to dismiss a charge. Yes, I got your argument. Maybe this just reflects my misunderstanding of employment law, but I thought employers could fire somebody who didn't show up to work, and that even if there was somebody in that decision tree who had a bad motivation, a legitimate basis for firing is still a legitimate basis. But that's not – I guess neither here nor there are purposes right now. I take your argument. I don't know whether Judge Restrepo or Judge Fuentes have anything else they want to ask. Very short question. Other than dismissal of the complaint against Grisby, what specific relief are you seeking? Mr. Grisby – so Mr. Grisby is seeking monetary relief and declaratory judgment primarily. He's also reserved the right to seek costs and attorney's fees and punitive damages. And you want those damages, monetary damages, to be awarded in the prison context? I'm sorry. I guess I'm not sure I understand the question. He wants – in the district court, he's seeking nominal damages and compensatory relief. That's available. What specific declaratory relief were you asking? That his First Amendment rights were violated. Okay. And that was in relation to the filing of his grievance – I'm sorry, the filing of the complaint. The violation of his First Amendment rights that he alleges is that he – so he threatened McBeth. He said, I'm going to file a grievance against you for not giving me the correct food trays. And he says that McBeth filed a misconduct charge in retaliation for his threat. He used the grievance system. And the use of the grievance system is a protected conduct. Thank you. Okay. Is my time up? Okay. But we'll have you back on rebuttal. We've got three minutes for you on rebuttal. Mr. Kirkpatrick. Thank you. May it please the Court. My name is Sean Kirkpatrick. And I'm with the Pennsylvania Office of Attorney General. And I'm here on behalf of Officer McBeth. And we agree that the dispute in this case has narrowed. And we agree that remand is appropriate because a dispute of facts exists. And that the only question in our mind left is whether the Court should vacate to allow for limited discovery and the District Court to hold a small v. Camden hearing or reverse the order and preclude any hearing for development of the record on the exhaustion issue. And I believe my friend on the other side overlooks the possibility of a small v. Camden hearing such that the District Court can resolve a dispute of facts regarding exhaustion without having it need go to a jury. That's what we're asking here. We recognize that partly because of allegations and partially because of a change in the law post-appeal, that there are factual disputes that need to be resolved. And all we're asking for is that this Court vacate remand and allow the District Courts and the parties to develop a more fully developed record. And I think that that's important, especially in this context, because what it appears my friend is asking for is a per se universal rule that's going to be broadly applied. And I think my advice would be that this Court follow the same path it did in small v. Camden, which again had a situation where there was a dispute about whether exhaustion was available and whether the inmate in fact truly exhausted. And this Court vacated the order so the District Court could hold a hearing. The problem with having sort of a universal rule based upon what the parties agree is an inadequate fact record is that it's going to have obviously a lot broader implications. And I want to get to that. actually issued its decision outside the seven-day period. Has that got to get straightened out? Yes, Your Honor, it does. If you just look at the dates, they're beyond their seven working days. Okay. But as the superintendent... Let me ask a second question follow-up. Are there other factual issues that need to get developed in the record? I see two factual issues, Your Honor. One is whether the PRC... Because under 801, it's seven business days after the PRC received the misconduct appeal. So the question becomes, when did it receive it? And the record is not sufficient to answer that question. The second factual dispute... I'm sorry. Go ahead. The second factual dispute, as I see it, is how is 804 being applied at SEI Camp Hill? The Department of Corrections wrote and interprets 804 as allowing retaliation claims or retaliatory misconduct claims to be grieved through 804. And I can get into that in a second. You better, because I thought Mr. Forbes was pretty accurate in how he described 801 and 804, and that 804 is the generalized grievance procedure, and it is explicitly not for misconduct. So even if they happen to be built out of their way to allow misconduct to be grieved under 804, in that particular institution, that doesn't change the Commonwealth-wide statement of what the regulation is, does it? We disagree with my friend on the other side on not the language, but the lack of focus on the fact that it has to be directly related to a misconduct charge. And the reason it is not directly related to a misconduct charge is because this charge is actually not important to the First Amendment claim, and here's why. The charge... Wait a second. Back up. Back up. Are you saying that even though the regulation says, hey, this is not for misconduct charges, that if somebody says, I've got a First Amendment right, then they're supposed to know that what's available to them is 804, because then it's not directly related to a misconduct charge? An inmate is supposed to sit down and think, okay, now this is available to me? Yes, Your Honor, because it happens all the time. Refer this court to Fortune v. Bittner, where now it's an unpublished case, but I'm not presenting it for its holding, I'm presenting it for its fact pattern, in which an inmate professed confusion that he could grieve incidents related to a misconduct through 804, but the court found that that was belied because he filed two other grievances about the incident and the misconduct. Inmates recognize that you can grieve a retaliation regardless of what that retaliatory conduct is through 804 because it is separated from whether you are guilty of the actual misconduct charge. Now, if there is confusion in this regard, then the U.S. Supreme Court in Ross v. Blake says that the inmate needs to err on the side of exhaustion and actually exhaust. The fact question that exists in this case is, is FCI Camp Hill not applying the regulations as it should be, which is being alleged? If they're not, if they're simply rejecting these whole cloth, then we agree that it is not available. But that is not how the policy was drafted. That is not how the policy is being interpreted by the institutions. Hold on. When you say that's not how it's being drafted, look, I mean, maybe my colleagues aren't puzzled, but I thought we were on pretty sound ground, Mr. Grisby's attorneys, when they said 804 does not permit the adjudication of Grisby's claim because Grisby's claim does relate directly to a misconduct charge. It's about the misconduct charge. It's a statement that, hey, I got a misconduct charge, and I shouldn't have gotten a misconduct charge. And I'm not sure how you get any more directly related to a misconduct charge than disputing a misconduct charge. Well, Your Honor, respectfully, it's not the charge so much as the misconduct. So if this charge were replaced with any other charge, because the accusation is that it's being fabricated, so instead of refusing an order, it is replaced with attempt to escape or swearing at an officer or fighting with another inmate or any other fabricated charge. It doesn't change the First Amendment claim. I think you're – How does – let me ask you this. I think it's the same line that Judge Jordan is pursuing. How does Mr. Grisby bring a claim of retaliation under the current policies? How would he do it? He would bring a claim under 804 for the retaliation, and he would defend himself against the misconduct under 801. They serve two fundamentally different purposes. It's the equivalent of a civil court and a criminal court. And just like you can't collaterally attack the criminal conviction in a civil court, you can't use 804 to say the hearing examiner's ruling was wrong. But you can say guards are mistreating me under 804, and that's what he's claiming. This guard is mistreating me, and I should be able to grieve that. So you can't bring a claim, but you can't bring a claim for specifically retaliation under 804, correct? Oh, no, you can. You can bring a claim for retaliation under 804. Yes, absolutely. We believe in this context, but take the misconduct out. Say that the inmate has protected activity, the guard retaliates and does it by not letting them go to a shower, but no misconduct is ever issued. Well, 801 would never be triggered. So, of course, the inmates can grieve that through 804. So that's why it's sort of trying to have it both ways, that it's directly related to the charge for purposes of 804, but it's not directly related to the charge such that the inmate can bring it up as a grounds for why the misconduct was false and he is innocent of the misconduct through 801. And I'll note that if the court directs its attention to JA107, which is his appeal to the facility manager about this misconduct, he raises the issue of retaliation. So even if – I'm a little worried about your trying to have it both ways argument because, as it's written, it certainly looks like any prisoner who tries to bring the sort of retaliation claim that you're describing under 804 could very, very easily be told, hey, this is about misconduct. You can't do this. I mean, it's – so you're saying you're trying to have it both ways, but you're arguing in the teeth of your own prison regulations here and trying to make a distinction, which certainly to me is not evident on the face of the regulation. That, oh, well, it's not really about the misconduct. It's really about your First Amendment rights, so it really is available. That's an interesting argument, and I have your argument, but it's a challenging one for you to make in the face of the actual language of the regulation. But let's move away from that for a second. You said that – let me make sure I understand the second factual dispute that you thought was in play here, besides whether the PRC hit a seven-day window or not. Can you repeat that again? What is the factual dispute? Yes, Your Honor. Under 801, the – let me move to it. Under 801, the PRC has seven business days after receipt of a misconduct appeal to render a decision. Mr. Kirkpatrick, I'm sorry. I wasn't clear. I apologize. I understand that factual dispute. I mean, I understand that that is in dispute, but you said there was another factual dispute besides that one, and I'm just trying to get clear on that. What is that second factual dispute that you were indicating is out there and needs to be addressed on remand? Your Honor, it is how the institutions are applying 804 in this context. I think it would benefit everyone to have a more complete record to see how inmates and the institutions are interpreting 804. And let me put this to you. If – I mean, we're not under sort of Chevron deference regime here, where if the prison says this is how we interpret it, the federal courts are bound by it, right? I mean, we naturally want to pay some legitimate deference to the administrators managing the affairs of the prison, but for the sake of argument, assume we thought that 804 clearly said you cannot grieve something dealing with a misconduct here and that it didn't matter whether prison officials said, well, you can grieve stuff that has to do with a misconduct here. Is that really a factual dispute, or is that just a straight-up legal dispute, which surrounds the regulation, the wording of the regulation? Either you're going to follow the wording of the regulation or you're not, and that's a legal question, not a factual question. Do you get what I'm trying to ask? I do, Your Honor, and that is a legal question. I completely agree with you, and if this court makes that determination, yeah, and, you know, that's how we're going to have to live with that moving forward. I guess I simply – two points on that. One is I would caution, based on an sort of inadequate record, this might not be the best vehicle to do that if the court was so inclined. But number two would be I guess the factual dispute in my case was sort of the assumption that the court was going to read the 804 the way we were reading it, and even if it did, unfortunately for me, there still is a factual dispute as to whether he was being – it was available because he was being afforded. So I guess if the court doesn't agree with me on the legal aspect, then it doesn't have that second factual dispute. Okay. Thank you. Judge Fuentes or Judge Restrepo, do you have any additional questions for Mr. Kirkpatrick? I do not. I do not. Your Honor, I know I only have 30 seconds, but can I make one factual clarification on a question that you asked my friend on the other side about whether hearing examiners can dismiss a misconduct if it's fabricated? Yes, go ahead. My answer is yes. I just want to make sure that's clear. They can absolutely dismiss a misconduct if it's fabricated. And in that context, and again, the record is not exactly complete on this, and that's why it would be helpful to remand and vacate. If that happens, if a hearing examiner determines that a guard is fabricating misconducts, there will be an investigation. So there is a broader remedy than simply you're guilty or not guilty. Thank you, Your Honor. Okay. Thanks. Mr. Forbes, your rebuttal. Yes, Your Honor. Thank you. First, I just want to say I think that there's a lot of confusion over these issues, and now is the time to address them with this case. And the best evidence for this is first, there's already been three cases from the Third Circuit that were cited in the briefs where the Third Circuit was presented with arguments, these same arguments or similar arguments in reserve. That's Armstrong v. Brooks, Wilson v. Unknown Budgen, and Ray v. Curtis. All of them in the briefs, all of them already declined to address these issues. Similarly, I did a Westlaw search for unpublished decisions for DCADM 804 and directly related. I turned up ten cases that were litigating these. These disagreements are already making their way to the courts. I found five unpublished decisions that actually held just as what Mr. Grisby is arguing, that a misconduct-based retaliation claim is, in fact, directly related and can't be brought through 804. Now, a bunch of these are magistrate judge opinions. They don't make it into the Westlaw Publisher, but they're being presented. Prisoners understand this ambiguity. They're raising these disputes. We'd all be better off if there was a clear path in the prison administrative system for these things to get adjudicated so the legitimate ones can get sorted out. The next real quick point, Judge Jordan, on the authority of the hearing examiner, the hearing examiner only has the authority to determine whether the prisoner is guilty of the misconduct charge, and that's on JA 82. It says the hearing examiner shall determine. Even if we were to assume that's true and we just heard Mr. Cook-Pastor say that's not true, that, in fact, the hearing examiners have the power to say, look, this is an inappropriate charge. This is a retaliatory charge. I'm dismissing it. So evidently, in practice, they do do that. You already acknowledged that if a prisoner exhausts as a prisoner must, the PRC does have the authority to do that, right? The PRC has the authority to review whether the procedures employed were contrary to law. Right. But the hearing examiner does not. Clearly retaliatory one would be. So the system has a safety valve. In theory, I guess perhaps. However, it's unclear. I think it's ambiguous in the terms of the regulation. Also, in fact, I think this case itself indicates that it's questionable whether it's being practiced. My client raised his retaliation claim to the hearing examiner, to the PRC, and to the facility manager. Not one in their written decision even mentioned the word retaliation. There's no adjudication of the claim whatsoever. I have one question. Obviously, this case is going to be remanded. You both agree. Upon remand, would you give me your take on the precise issue that the district court would be addressing? It depends on the extent of the court's order. As I prefer, I think the court could hold. From your standpoint? From my standpoint, the prisoner, Mr. Grigsby, has exhausted his administrative relief that was available to him, and now the case would proceed on its merits. My understanding is that many corrections officers, in Mr. McBeth's standpoint, have strong grounds for defending themselves against retaliation claims. It's not easy to win a retaliation claim as a prisoner. I'd expect that Mr. Grigsby might see a Rule 12 motion on the merits for Rule 12b-6. There was no such argument that he failed to state the claim here. Perhaps that would be the next thing that Mr. Grigsby would see. If he was able to survive that, there might be a limited discovery period. It could be an evidentiary hearing early in the case, and that's how the case would proceed. Okay. Thank you, Mr. Forbes. All right. Mr. Forbes, I want to express the gratitude of the court for you taking this case on. Thank you very much. And thank both counsel for their argument this morning. We've got the case under advisory.